# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CONNIE FRANCES BLACKCLOUD <br><br> Defendant. | No. 06-CR-162-2-LRR <br><br> **SENTENCING MEMORANDUM** |

_____

## *I. INTRODUCTION*

The matter before the court is the sentencing of Defendant Connie Frances Blackcloud.

## *II. RELEVANT PROCEDURAL BACKGROUND*

On March 7, 2007, Defendant was charged in a two-count Superseding Indictment with her co-defendant, Lamont William Papakee ("Lamont Papakee").[1] Count 1 charged that, on or about September 6, 2006, defendants committed the crime of Aggravated Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2, 1151, 1153 and 2241(a)(1).[2] Count 2 charged defendants with Sexual Abuse in Indian Country, on the

---

[1] On December 7, 2006, Defendant and Lamont Papakee were charged in a one-count Indictment with Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2, 1151, 1153 and 2242(2).

[2] **§ 2241. Aggravated sexual abuse**

    **(a) By force or threat.**—Whoever . . . knowingly causes another person to engage in a sexual act—

(continued…)

same date, in violation of 18 U.S.C. §§ 2, 1151, 1153 and 2242(2).[3]

On June 25, 26, 27 and 28, 2007, defendants appeared before the court for a jury trial on both counts of the Superseding Indictment. On June 28, 2007, the jury returned verdicts of not guilty as to both defendants on Count 1 and verdicts of guilty as to both

---

[2](…continued)
>    **(1)** by using force against that other person;
>
>    * * * *
>
>    or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. § 2241(a)(1) (emphasis in original). Section 2241 was amended in 2007, *see* Pub. L. 110-161, 121 Stat. 2082 (Dec. 26, 2007), however, such amendment is not relevant here.

[3]
> **§ 2242. Sexual abuse**
>
> Whoever . . . knowingly—
>
> * * * *
>
> **(2)** engages in a sexual act with another person if that other person is—
>
>    **(A)** incapable of appraising the nature of the conduct; or
>
>    **(B)** physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
>
> or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

18 U.S.C. § 2242(2) (2006) (emphasis in original). Section 2242 was amended in 2007, *see* Pub. L. 110-161, 121 Stat. 2082 (Dec. 26, 2007), however, such amendment is not relevant here.

defendants as to Count 2. The undersigned accepted the jury's verdicts.

On March 13, 2008, the United States Probation Office ("USPO") filed Defendant's Presentence Investigation Report ("PSIR"). On March 27, 2008, the government filed its sentencing memorandum. On March 28, 2008, Defendant filed her sentencing memorandum.[4]

On March 31, 2008, the court held a sentencing hearing ("Hearing"). Assistant United States Attorney Robert L. Teig represented the government. Attorney Eric K. Parrish represented Defendant, who was personally present.

At the Hearing, the court calculated Defendant's pre-departure advisory Sentencing Guidelines range and then adjourned the Hearing. The instant Sentencing Memorandum is designed to explain how the court calculated such range. The court will resume Defendant's sentencing on April 25, 2008, at 12:30 p.m.

### III. FACTUAL FINDINGS

At the Hearing, the court based its factual findings upon the uncontested provisions of the PSIR and the trial evidence. The court's factual findings were not necessarily consistent with those of the jury, which inexplicably acquitted defendants of Count 1.[5]

---

[4] Defendant's sentencing memorandum was untimely and incomplete. *See* Order Setting Sentencing Hearing (docket no. 123), at 1-3 (requiring memoranda to be filed at least four calendar days before the sentencing hearing and include, among other things, "[a] list of all sentencing issues counsel will ask the court to decide, with a separate brief that contains a citation to all statutes, case law and guideline sections relied on in support of counsel's position").

[5] "Acquitted conduct may be used for sentencing purposes if proved by a preponderance of the evidence." *United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007) (citing *United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998)); *see also United States v. Jimenez*, 513 F.3d 62, 88 (3d Cir. 2008) ("The counts of conviction determined [the defendant's] sentencing exposure, and the district court was free to consider relevant conduct, including conduct resulting in acquittal, that was proved by a preponderance of the evidence in determining [the defendant's] sentence within the original
(continued…)

The court found the following facts by a preponderance of the evidence:[6]

In late August of 2006, Luci Dale a/k/a "Lulu" moved to the Sac and Fox Tribe of the Mississippi in Iowa's Meskwaki Settlement in Tama County, Iowa ("Settlement"). Dale, who was a member of the Omaha Tribe of Nebraska, moved to the Settlement from Nebraska "to sober up[,] . . . get a job, and settle down." Trial Transcript at 4. Dale, an alcoholic herself, wanted to get away from alcoholics in her family. Dale knew several people who lived on the Settlement, including Alex Mauskemo and Monica Papakee (Lamont Papakee's sister). They were Dale's "friends from back in the days." *Id.* at 5.

Dale moved in with Mauskemo and applied for a job at the Meskwaki Bingo Casino Hotel. Dale managed to stay sober for approximately her first two weeks on the Settlement.

In early September of 2006, Monica Papakee introduced Dale to Lamont Papakee and Defendant a/k/a "Uncle Connie." Shortly thereafter, Dale moved in with Lamont

---

[5](…continued)
statutory sentencing range."); *United States v. High Elk*, 442 F.3d 622, 626 (8th Cir. 2006) ("Even post-*Booker*, for purposes of calculating the advisory guidelines range, the district court may find by a preponderance of the evidence facts regarding conduct for which the defendant was acquitted.).

[6] As a general matter, the court found Sheila Papakee and Luci Dale to be credible witnesses. Unlike other witnesses in this case, Sheila Papakee is not an alcoholic and was not intoxicated or drinking alcohol during the relevant time-period. The court recognizes that Dale was intoxicated throughout the relevant time-period and unconscious when sexually assaulted in Lamont Papakee's living room. As a consequence, Dale was genuinely confused at the time of trial as to the timing of many of the events in question. However, the court found her testimony as to what Defendant and Lamont Papakee did to her in Lamont Papakee's bedroom to be fully credible.

The court did not find the testimony of Alicia Papakee (Lamont Papakee's sister) or Marland Sanache (Lamont Papakee's good friend) to be credible insofar as such testimony conflicted with the testimony of other witnesses.

Papakee at his residence on the Settlement at 315 Red Earth Drive, Tama County, Iowa.[7] Dale slept in Lamont Papakee's bedroom, while he slept on the couch or the floor in the living room. At the time, Defendant was also living at Lamont Papakee's house.

During the brief period while they lived together, Dale, Lamont Papakee and Defendant drank alcohol every day until they were intoxicated. Dale drank beer and vodka. Dale also smoked cigarettes when she was drunk.

Defendant verbally and physically abused Dale, often in a most brutal fashion. Defendant called Dale "a wanna-be white bitch" and told her she did not belong on the Settlement because she was not a Meskwaki. *Id.* at 16. Defendant pulled Dale's hair, scratched Dale and repeatedly hit her in the face with a closed fist. For his part, Lamont Papakee called Dale a "bitch."

Dale did not fight back "because it wasn't [her] place." *Id.* at 18. When Dale asked Defendant and Lamont Papakee to stop hurting her, Defendant "just laughed" and Papakee "would say he was just playing." *Id.*

On September 4, 2006 (Labor Day), Dale, Lamont Papakee and Defendant were intoxicated in Lamont Papakee's house. Sometime in the morning or early afternoon, Dale passed out or fell asleep on a couch in the living room. Papakee and Defendant stripped off Dale's pants and placed a large broken cucumber in her vagina. The cucumber was approximately two inches in diameter and three to four inches long.

Meanwhile, Sheila Papakee (Lamont Papakee's cousin) drove to Lamont Papakee's house with her children and their bicycles. Sheila Papakee parked her truck and took her children on a walk on a nearby paved trail.

Around 1 p.m., Sheila Papakee and her children finished their walk. Sheila Papakee left her children outside and went into Lamont Papakee's house. Once inside the house, Sheila Papakee found Lamont Papakee, Defendant and Dale intoxicated. Lamont

---

[7] This address is now known as 319 Deerfield Crossing, Tama County, Iowa.

Papakee and Dale were sitting upright and leaning back on a couch together. Lamont Papakee was awake; Dale was passed out and had a blanket covering her waist. Defendant was wandering around the house drunk.

Lamont Papakee motioned at Dale and asked Sheila Papakee: "Do you want to check this out?" *Id.* at 230. Before Sheila Papakee could respond, Lamont Papakee flipped up the blanket around Dale's waist. Dale was naked at the waist and had a broken cucumber protruding from her vagina.

Sheila was "shocked." *Id.* at 233. Suddenly, Sheila Papakee and Lamont Papakee heard Sheila Papakee's children coming into the house. Lamont Papakee re-covered Dale's waist, and Sheila Papakee left the house. Sheila Papakee and her children drove home, which was approximately five minutes away. Sheila Papakee did not call the police because she was "scared." *Id.* at 252.

Once home, Sheila Papakee realized that she had left the children's bicycles at Lamont Papakee's house. Around 2 p.m., Sheila Papakee returned to Lamont Papakee's house to pick up the bicycles and to check on Dale. Sheila Papakee was worried about Dale. Sheila Papakee loaded the bicycles in her truck and went in the house.

When Sheila Papakee entered Lamont Papakee's house for the second time, Defendant, Lamont Papakee and Dale were all awake, intoxicated and sitting on the couch drinking alcohol. Dale was fully clothed and appeared to be fine. After about ten or fifteen minutes, Sheila Papakee left.

Dale eventually fell asleep in Lamont Papakee's bed. Although it was the middle of the day, the shades were drawn and the room was dark.

Sometime thereafter, Lamont Papakee and Defendant went into the bedroom. Lamont Papakee and Defendant turned on the light and woke up Dale. Defendant was carrying a large curved cucumber and smoking a cigarette.

Dale was laying on her back in the bed. Lamont Papakee put his knees on Dale's

6

shoulders and held Dale down on the bed. Defendant then pulled apart Dale's legs and ripped Dale's pajama pants.

Lamont Papakee repeatedly head-butted Dale in the face while he was holding her down on the bed. He hit her on the side of her face. Defendant whacked Dale upside the head with a glass vodka bottle and hit her with the metal end of a Bic lighter. Defendant twice pressed a lit cigarette directly onto Dale's skin—once on Dale's buttock and once on her thigh. Defendant and Lamont Papakee then pushed the cucumber into Dale's vagina.

Dale drifted in and out of consciousness during the attack, which lasted approximately fifteen to twenty minutes. When conscious, Dale continuously resisted Defendant and Lamont Papakee; Dale kicked her legs and moved her arms.[8] Defendant told Dale to "shut up and take it like a man." *Id.* at 26. Defendant and Lamont Papakee repeatedly laughed at Dale.

Around 3 p.m., Sheila Papakee entered Lamont Papakee's house for a third time.[9] Dale, Lamont Papakee and Alicia Papakee (Lamont Papakee's sister) were in the bedroom. Defendant was walking from the bedroom into the living room.

Sheila Papakee entered the bedroom and found Dale laying on her back on the bed. Lamont Papakee and Alicia Papakee were sitting on the sides of the bed. The curtains were still drawn.

Alicia Papakee was tending to Dale. Alicia Papakee was applying pressure to Dale's forehead with linens, in an attempt to stop Dale from bleeding. Dale bled on a number of linens in the bedroom.

---

[8] At no time did Dale consent to having a cucumber in her vagina.

[9] When Sheila Papakee returned home after her second time in Lamont Papakee's home, she called Lamont Papakee on the telephone and asked how Dale was doing. Lamont Papakee did not respond; instead, he gave the phone to Dale. Sheila Papakee asked Dale: "Are you all right? Are you okay?" *Id.* at 277. Dale only cried in response. Concerned, Sheila Papakee decided to return to Lamont Papakee's house.

Sheila Papakee ordered Defendant to return to the bedroom to help Dale. Sheila Papakee asked Defendant: "What the fuck did you hit Dale with?" *See id.* at 247. Defendant replied, "My Bic [lighter]." *Id.* Defendant lay beside Dale and started putting pressure on her forehead.

Eventually, Dale stopped bleeding. Sheila Papakee escorted Dale out of the house and drove her to her father Rodney Papakee's house. As Sheila Papakee left the house, she saw Lamont Papakee pick the broken cucumber off of the living room floor and eat it.

Dale and Sheila Papakee did not immediately report the sexual assault to law enforcement. They were afraid to call law enforcement.

That night, Rita Papakee (one of Lamont Papakee's cousins) stayed up all night on a "drunken binge" with two relatives. *Id.* at 133. The three relatives, all intoxicated, drove to Lamont Papakee's house on the morning of September 5, 2006. Lamont Papakee was out of alcohol, so the three relatives brought him alcohol and started drinking with him in his house.

Later that morning, Rita Papakee drove Lamont Papakee to Rodney Papakee's house. Monica Papakee, Sheila Papakee and Dale were there. Sheila Papakee had already told Monica Papakee about what she had seen at Lamont Papakee's house the previous day. Rita Papakee saw a laceration on Dale's head.

Monica Papakee and Sheila Papakee told Rita Papakee what Sheila Papakee had seen at Lamont Papakee's house the previous day. Dale confirmed that "they" had "used a cucumber on me" "front and back" *Id.* at 128-29. Rita Papakee, who was "outraged" and found the allegations "disturbing and disgusting," decided to confront Lamont Papakee. *Id.* at 110.

An intoxicated Rita Papakee asked Lamont Papakee: "What the fuck did you do? What the fuck's the matter with you?" *Id.* at 110. Lamont Papakee did not deny or

8

confirm sexually assaulting Dale. Lamont Papakee simply responded: "Why are you yelling at me? . . . [W]hat is she to you? What does it matter to you?" *Id.* at 110-11. Rita Papakee asked Lamont Papakee: "How would you feel if somebody did that to your daughter?" *Id.* at 111. Lamont responded: "You don't even know this woman. What does it matter?" *Id.*

Still intoxicated, Rita decided to confront Defendant. Rita Papakee found Defendant at Defendant's sister's house and asked Defendant what she did to Dale and "what the fuck was the matter with [Defendant]." *Id.* at 114. She asked: "And you guys used a fucking cucumber on her?" *Id.* Defendant laughed and replied: "Yeah, I did use a cucumber on her." *Id.* Rita then punched Defendant in the face. Defendant just laughed.

On September 6, 2006, Tama County Deputy Sheriff Wesley Sebetka ("Deputy Sebetka") received a call from dispatch that there was a report of a sexual assault on the Settlement. Deputy Sebetka went to Rodney Papakee's residence, where he met Dale. Dale was intoxicated and laying in bed. She had scratches, cuts on her head and multiple bruises over her body. Dale did not want to talk about a sexual assault, although she mentioned she had a "scuffle" with Lamont Papakee. *Id.* at 410. Dale later left the Settlement on a bus towards Omaha, Nebraska.

On September 8, 2006, FBI Agent Jason Amoriell ("Agent Amoriell") received a call from Roger Sanders, Chief of the Meskwaki Nation Police Department, about an alleged assault at the Lamont Papakee residence. Shortly thereafter, Agent Amoriell met with members of the Tama County Sheriff's Department and the Meskwaki Nation Police Department. Together, they obtained a warrant to search Lamont Papakee's home for evidence of a sexual assault.[10] Agent Amoriell recovered bloody linens from the home.

---

[10] A more complete version of the events leading to the execution of a warrant at
(continued…)

DNA on the linens matched Dale's DNA. Agent Amoriell also saw cucumber peels in the trash can in Lamont Papakee's kitchen.

Also on September 8, 2006, Kristen Hammes ("Nurse Hammes"), a registered nurse and trained "Sexual Assault Nurse Examiner," examined Dale in a hospital in Omaha, Nebraska. Dale told Nurse Hammes that "she had a bottle/glass broken on her head by [Defendant] while Lamont [Papakee] assaulted her sexually." *Id.* at 159. Dale also stated that she was vaginally penetrated with a cucumber while resisting.

Nurse Hammes observed bruises, lacerations and cigarette burns on Dale's body. Nurse Hammes took photographs of Dale's injuries and found that they were consistent with Dale's allegations. *See* Gov't Exs. 8- 13. Nurse Hammes also made a formal report. *See* Def. Blackcloud Ex. C. Nurse Hammes did not observe any injuries to Dale's vaginal area, but testified as an expert that the lack of such injuries was not necessarily inconsistent with Dale's allegations of sexual assault.

## IV. SENTENCING FRAMEWORK

The Sentencing Guidelines are no longer mandatory. *See Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (discussing *United States v. Booker*, 543 U.S. 220, 245 (2005). They are advisory. *Id.*

The Eighth Circuit Court of Appeals states that a "district court should begin [a sentencing proceeding] with a correct calculation of the advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). The advisory Sentencing Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008). "Then, after giving both parties

---

[10](…continued)
Lamont Papakee's home may be found at *United States v. Papakee*, No. 06-CR-162, 2007 WL 891717 (N.D. Iowa Mar. 21, 2007).

a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *United Stats v. Gall*, 128 S. Ct. 586, 597 (2007)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

## V. THE ISSUES

At the Hearing, the court ruled upon four advisory Sentencing Guidelines issues. The court decided (1) whether a four-level increase is appropriate, pursuant to USSG §2A3.1(b)(1) (2007),[11] because Defendant caused or attempted to cause Dale to engage in a sexual act by using force against her; (2) whether Defendant is entitled to a four-level reduction, pursuant to USSG §3B1.2(a), for minimal role; (3) whether a two-level reduction is appropriate, pursuant to USSG §3E1.1(a), for acceptance of responsibility; and (4) whether Defendant is a career offender under USSG §4B1.1.

## VI. PRE-DEPARTURE ADVISORY SENTENCING GUIDELINES RANGE

### A. Base Offense Level—USSG §2A3.1(a)(2)

The jury convicted Defendant of Sexual Abuse, in violation of 18 U.S.C. § 2242(2). Accordingly, Defendant's Defendant's base offense level was **30**, pursuant to USSG §2A3.1(a)(2). *See* USSG App. A (stating that convictions under §2242 are judged under USSG §2A3.1).

---

[11] The parties agree that the 2007 edition of the Sentencing Guidelines manual applies. *See* PSIR at ¶ 17.

### B. *Use of Force—USSG §2A3.1(a)(2)*

Section 2A3.1(a)(2) provides for a four-level increase "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) . . . ." USSG §2A3.1(a)(2). As applied to the facts of this case, Defendant was liable for this four-level increase if she caused Dale to engage in a sexual act by use of force. That is, Defendant was liable for the sentencing enhancement if the court found by a preponderance of the evidence that she was guilty of Aggravated Sexual Abuse.

Based upon the facts that the court found in Part IV *supra*, a four-level adjustment was clearly appropriate. Defendant repeatedly used force against Dale, in order to cause her to engage in a sexual act. Put simply, Defendant brutalized Dale in a sadistic attempt to rape her with a vegetable.

This brought Defendant's adjusted offense level to **34**.

### C. *No Downward Adjustments Apply*

The court held that Defendant was not eligible for downward adjustments for minimal role or acceptance of responsibility, pursuant to USSG §3B1.2(a) or USSG §3E1.1(a), respectively. Defendant was not a minimal participant in the attacks against Dale. Defendant has not admitted her participation in the criminal conduct at issue and never showed any remorse whatsoever for her actions.

Accordingly, Defendant's adjusted offense level remained at **34** after the court considered Chapter 3 of the advisory Sentencing Guidelines.

### D. *Career Offender—USSG §4B1.1*

As applied here, the advisory Sentencing Guidelines provide that Defendant's adjusted offense level should be increased to 37 and her Criminal History Category becomes VI if she is a "career offender." *See* USSG §4B1.1(b)(A) (provision where statutory maximum for the offense of conviction is life). Defendant is a career offender if:

> (1) [she] was at least eighteen years old at the time [she] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [she] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*Id.* §4B1.1(a).

The court held that Defendant is a career offender. First, Defendant was at least eighteen years old at the time she committed the instant offense of conviction, Sexual Abuse in Indian Country. Defendant was forty-six-years old in September of 2006. Second, Sexual Abuse in Indian Country is a felony that is a crime of violence. Sexual Abuse in Indian Country is punishable by life imprisonment, 18 U.S.C. § 2242, and "involves conduct that presents a serious potential risk of physical injury to another," USSG §4B1.2(a)(2); *see, e.g., United States v. Austin*, 426 F.3d 1266, 1280 (10th Cir. 2005) (holding that state statute that criminalized non-forcible statutory rape was a crime of violence), *cert. denied*, 546 U.S. 1194 (2006); *cf. United States v. See Walker*, 452 F.3d 723, 726 (8th Cir. 2006) (holding that Aggravated Sexual Abuse in Indian Country is a crime of violence). Third, Defendant has at least two prior felony convictions for crimes of violence. In 1995, Defendant was convicted of Operating While Intoxicated—Second Offense, in violation of Iowa Code § 321J.2 (1993). In 1996, Defendant was convicted of Operating While Intoxicated—Third Offense, in violation of Iowa Code § 321J.2 (1995). In the Eighth Circuit, it is now settled that these two convictions are crimes of violence. *United States v. McCall*, 439 F.3d 967 (8th Cir. 2006) (en banc), *abrogating United States v. Walker*, 393 F.3d 819 (8th Cir. 2003). Notwithstanding Defendant's arguments to the contrary, it is not the province of this court to rely upon an abrogated panel decision, *Walker*, or speculate that the Supreme Court may

13

soon abrogate *McCall*.[12]

Accordingly, the court held that Defendant is a career offender. This brought Defendant's total offense level under the advisory Sentencing Guidelines to **37**.

### E. Criminal History Category

Absent a finding that Defendant is a career offender, it was undisputed that she would be a **Criminal History Category IV**. Because Defendant is a career offender, she is a **Criminal History Category VI**. USSG §4B1.1(b).

### VII. DISPOSITION

After all applicable adjustments, the court found that Defendant's total offense level was **37**. The court also found that Defendant was a **Criminal History Category VI**. Accordingly, the court found that Defendant's pre-departure advisory Sentencing Guidelines range was **360 months to life imprisonment**. *See* USSG Sentencing Table.

**IT IS SO ORDERED.**

**DATED** this 7th day of April, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[12] *See Begay v. United States*, No. 06-11543 (U.S. 2008) (argued January 15, 2008).